UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CHARLIE COLEMAN,

        Plaintiff,

v.

UNKNOWN RINGEUTTE et al.,

        Defendants.

_____/

Case No. 2:22-cv-106

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.)

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will dismiss without prejudice Defendant Kent.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court concludes that Plaintiff's remaining claims, First Amendment retaliation claims against Defendants Ringeutte and LaBuff, may proceed.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP officials: Correctional Officers Unknown Ringeutte, Unknown Kent, and Unknown LaBuff. (Compl., ECF No. 1, PageID.1.)

In Plaintiff's complaint, he alleges that in mid-2021, he told Defendant Ringeutte that he would file a complaint against staff regarding the inhumane conditions in the housing unit. (*Id.*, PageID.2.) Plaintiff contends that Defendant Ringeutte "informed the Plaintiff that he would not have to worry about the conditions of the unit much longer because [Ringeutte would] see to it that the Plaintiff [wa]s sent to the hole (segregation)." (*Id.*) Thereafter, Plaintiff contends that Defendant Ringeutte wrote him a false threatening behavior misconduct ticket, and Plaintiff was then housed in segregation. (*Id.*) Subsequently, Plaintiff was found not guilty of this misconduct charge, released from segregation, and sent to a different housing unit "to keep separate from Ringeutte." (*Id.*)

In October 2021, Plaintiff received a disobeying a direct order misconduct ticket, and he returned to segregation. (*Id.*) After Plaintiff served ten days in segregation, he informed Assistant Resident Unit Specialist (ARUS) Johnson (not a party) "that he did not want to be released to B-Unit due to the prior [quarrels] he had with Defendant Ringeutte and other [B-Unit] officers." (*Id.*) Despite Plaintiff's request, on November 8, 2021, he was released back to general population in B-Unit. (*Id.*)

In January of 2022, "MBP began construction to rearrange the yard," and "as an alternative to replace yard [time], unit officers were ordered to pass out the cordless, unit phones on each

gallery from cell-to-cell, and, also let out each prisoner in pairs of two to allow them access to the JPay kiosk machine." (*Id.*, PageID.3.) During this time, Defendant LaBuff denied Plaintiff both privileges (use of the phone and use of the JPay kiosk machine) on multiple occasions. (*Id.*) Plaintiff asked Defendant LaBuff why he was denying Plaintiff these privileges, and Defendant LaBuff "informed the Plaintiff that 'he's not getting s*** around here s[i]nce he has a problem with Ringuette and likes to file complaints on [LaBuff's] colleag[u]es.'" (*Id.*) Plaintiff "then filed a grievance against [Defendant] LaBuff for retaliating against [Plaintiff] for filing complaints against [Defendant] Ringeutte." (*Id.*) Thereafter, Defendant Ringeutte "attempted to assassinate the Plaintiff's 'jailhouse' reputation by [mis]informing other prisoners[,] . . . who were well-known gang members, that the Plaintiff was filing grievances against staff for allowing other prisoners more time with the phone than him[,] as though the Plaintiff was 'snitching' on others." (*Id.*) Some of these prisoners approached Plaintiff regarding this issue, and Plaintiff "explained that it was a dubious attempt by Ringeutte to have the Plaintiff assaulted." (*Id.*) To prove that Plaintiff was not snitching on other prisoners, Plaintiff showed copies of his grievances to the other prisoners. (*Id.*)

On March 22, 2022, Defendant Kent delivered Plaintiff's mail to Plaintiff in "a white manila envelope." (*Id.*, PageID.4.) Pursuant to MBP's mail policy, Plaintiff removed his personal mail from the manila envelope and then returned the manila envelope to Defendant Kent. (*Id.*) Shortly after returning the manila envelope to Defendant Kent, "Plaintiff was suddenly struck in the face with the exact same envelope that he just returned to [Defendant] Kent[,] which was now balled up." (*Id.*) Plaintiff states that the "crum[p]led up envelope . . . partially poked the Plaintiff's eye out causing blurriness of vision." (*Id.*) Plaintiff contends that when he was struck by the envelope, he heard Defendant Kent "yell: 'Here P****!'" (*Id.*) Thereafter, "due to [Plaintiff's] natural reflexes," he "quickly grabbed the crum[p]led up envelope and threw it back out of his cell

3

accidentally counter-striking [Defendant] Kent on the head." (*Id.*) Plaintiff contends that Defendant Kent "then began to rant in rage, yelling out how he [would] defin[i]tely give the Plaintiff something to complain about when he sends [Plaintiff] to the hole." (*Id.*) Defendant Kent then issued Plaintiff an assault and battery on staff misconduct ticket, and Plaintiff was sent to segregation. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants Ringeutte, LaBuff, and Kent violated his First Amendment rights by retaliating against him. (*Id.*) Plaintiff also avers that Defendant Kent violated his Eighth Amendment rights when he threw "the crum[p]led up envelope" at Plaintiff. (*Id.*, PageID.5.) As relief, Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*)

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

4

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous

prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983

suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Ringeutte is the first Defendant named in the action. (*See* Compl., ECF No. 1, PageID.1–2.).[1] In Plaintiff's complaint, he alleges that in mid-2021, after Plaintiff told Defendant Ringeutte that he would file a complaint against staff for the inhumane conditions in the housing unit, Defendant Ringeutte told Plaintiff "that he would not have to worry about the conditions of the unit much longer because [Ringeutte would] see to it that the Plaintiff [wa]s sent to the hole." (*Id.*, PageID.2.) Plaintiff contends that Defendant Ringeutte then issued Plaintiff a false misconduct ticket, and Plaintiff was sent to segregation. (*Id.*) Subsequently, in January of 2022, when Plaintiff was again housed in the housing unit where Defendant Ringeutte worked, Defendant LaBuff denied Plaintiff the use of the phone and the use of the JPay kiosk machine on

---

[1] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

7

multiple occasions. (*Id.*, PageID.3.) Plaintiff asked Defendant LaBuff why he was denying Plaintiff these privileges, and Defendant LaBuff "informed the Plaintiff that 'he's not getting s*** around here s[i]nce he has a problem with Ringuette and likes to file complaints on [LaBuff's] colleag[u]es.'" (*Id.*) Plaintiff filed a grievance against Defendant LaBuff, and thereafter, Defendant Ringeutte "attempted to assassinate the Plaintiff's 'jailhouse' reputation." (*Id.*) Plaintiff then describes an incident that occurred on March 22, 2022, in which he alleges that Defendant Kent threw a crumpled-up envelope at Plaintiff, striking Plaintiff in the eye. (*Id.*, PageID.4.) After Plaintiff threw the envelope back at Defendant Kent, hitting him on the head, Plaintiff contends that Defendant Kent "began to rant in rage, yelling out how he [would] defin[i]tely give the Plaintiff something to complain about when he sends [Plaintiff] to the hole." (*Id.*)

Plaintiff's allegations against Defendant Kent regarding the incident on March 22, 2022, are transactionally unrelated to his allegations against Defendants Ringeutte and LaBuff. Although not specifically articulated by Plaintiff, Plaintiff may believe that Defendant Kent's alleged statement that he would "defin[i]tely give the Plaintiff something to complain about when he sends [Plaintiff] to the hole" (*id.*) was a reference to other grievances or complaints filed by Plaintiff. However, Plaintiff has failed to allege sufficient facts to show any such connection. And, regardless, even assuming that Defendant Kent was referencing Plaintiff's prior complaints, this vague reference does not automatically grant Plaintiff leave to join unrelated claims together. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

Here, the incident with Defendant Kent on March 22, 2022, in which Defendant Kent allegedly threw a crumpled-up envelope at Plaintiff, is a separate occurrence that is not

transactionally related to the prior incidents of alleged retaliation by Defendants Ringeutte and LaBuff. Accordingly, the Court concludes that Defendants Ringeutte and LaBuff are properly joined because Plaintiff's claims against these Defendants arise out of the same transaction and occurrence. However, Plaintiff has improperly joined Defendant Kent.

**B.     Remedy**

Because the Court has concluded that Plaintiff has improperly joined one Defendant to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting

9

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's misjoined claims involve conduct that occurred in March of 2022, which is well within the three-year period of limitations. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file a new complaint against the misjoined Defendant, and he will not suffer gratuitous harm if Defendant Kent is dismissed.

10

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant Kent as a party from this suit because he is misjoined and Plaintiff's claims against him are not at risk of being time-barred. The Court will dismiss without prejudice Plaintiff's claims against Defendant Kent under Rule 21 of the Federal Rules of Civil Procedure. If Plaintiff wishes to proceed with his claims against Defendant Kent, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[2]

### III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff alleges that Defendants Ringeutte and LaBuff violated his First Amendment rights by retaliating against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claims against Defendants Ringeutte and LaBuff may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendant Kent is misjoined to this action. The Court will drop Defendant Kent as a party and dismiss Plaintiff's claims against him without prejudice. Plaintiff's First Amendment retaliation claims against Defendants Ringeutte and LaBuff remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 16, 2022                     /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge